IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

DAVID GONZALEZ, JR.          §
    TDCJ-CID NO. 1505685          §
v.                           §          C.A. NO. C-10-069
                               §
RICK THALER                  §

**MEMORANDUM AND RECOMMENDATION TO**
**GRANT RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

Petitioner is a state prisoner currently incarcerated at the Connally Unit in
Kenedy, Texas.  On February 16, 2010, Petitioner filed this pro se habeas corpus
petition pursuant to 28 U.S.C. § 2254, alleging that he was given ineffective
assistance of counsel and that his guilty plea was coerced.  (D.E. 1, 2).  Pending is
Respondent's motion for summary judgment.  (D.E. 31).  Petitioner filed a
response on November 1, 2010.  (D.E. 37).  For the reasons stated herein, it is
respectfully recommended that Respondent's motion for summary judgment be
granted, and that this habeas action be dismissed.

**I.  JURISDICTION**

The Court has jurisdiction over the subject matter and the parties pursuant to
28 U.S.C. §§ 2241, 2254, which provide that jurisdiction is proper where the
inmate is confined, or where the conviction was obtained.  Wadsworth v. Johnson,
235 F.3d 959, 961-62 (5th Cir. 2002).  Petitioner was convicted in Nueces County,

Texas.  (D.E. 4, at 42).  Jurisdiction is, therefore, proper in this Court.  28 U.S.C. § 124(b)(6).

## II.  BACKGROUND

### A.    The Investigation, Prosecution, And Convictions.

On December 2, 2006, Riko Rodriguez was shot and killed in Corpus Christi, Texas.  (D.E. 4, at 108).  On January 11, 2007, Steven Perez, Petitioner's cousin, was arrested and charged with murder.  (D.E. 26-4, at 88).  On January 24, 2007, Mr. Perez gave a videotaped statement to the police in which he confessed to going to Mr. Rodriguez's apartment with Petitioner and a third man, Michael Lozano.  (D.E. 4, at 106).  According to Mr. Perez's account, they obtained a pistol en route to their destination and Mr. Lozano unexpectedly pulled it out and fired shots through Mr. Rodriguez's closed door without provocation or warning.  Id.

On January 25, 2007, Corpus Christi police officers arrested Petitioner for the murder.  (D.E. 27, at 97).  According to police reports, Petitioner told officers that he believed they were going to Mr. Rodriguez's home in order to assault him. Id.  He was indicted for committing murder as a repeat felony offender on April 5, 2007.  (D.E. 26-1, at 33-34; D.E. 37-3, at 5).  His indictment charged him with "intentionally and knowingly caus[ing] the death" of Mr. Rodriguez "by shooting with a firearm" with "the intent to cause serious bodily injury."  (D.E. 4, at 10).  He

was also indicted for being a felon in possession of a firearm on the same day as the murder. Id. at 12.

At a March 28, 2008 pretrial hearing held regarding the case against Mr. Perez, Petitioner sought new counsel, informing the trial court that his attorney and the prosecutor were colluding, deceiving him, and attempting to coerce him to plead guilty. Id. at 3-4. The attorneys related to the court that a plea to a felon in possession charge had been tentatively discussed, but was vetoed by supervisors in the district attorney's office, and that a plea to murder with a recommended sentence of ten years had been rejected by Petitioner. Id. at 5-6. Both attorneys denied that any misrepresentations or threats had occurred. Id. Petitioner also related that he and his attorney had been disagreeing, and that he did not believe he was getting zealous representation. Id. at 6-8. The court denied Petitioner's request. Id. at 8.

At Mr. Perez's trial on April 14, 2008, the prosecution urged the court to omit any lesser included charge of reckless manslaughter. Id. at 17. Defense counsel responded that there was evidence indicating that the defendants did not know whether anyone was inside the apartment, and that the shooting was therefore at most a reckless act. Id. at 18. After a lengthy colloquy on the issue, the court decided to include instructions on the lesser included offense of

manslaughter.  Id. at 21.

At closing argument in Mr. Perez's trial, the prosecutor stated to the jury that "[t]he only question is, is he guilty or not guilty of murder."  Id. at 26.  He told the jurors that there are "two ways of committing murder" and that "[y]ou don't have to tell us which way you think it happened.  We don't have to prove which way it happened."  Id.  During his closing argument, defense counsel emphasized that Mr. Lozano acted recklessly, not with intent or knowledge, and that Mr. Perez did nothing to aid or abet the commission of the offense.  Id. at 29.  Mr. Perez was found guilty of first-degree murder and sentenced to sixty years incarceration. (D.E. 2, at 3).

On May 9, 2008, Petitioner pled guilty to being a felon in possession of a firearm and manslaughter as a felony offender.  (D.E. 4, at 35; D.E. 26-1, at 37-38). In his judicial confession, he averred that he believed his attorney thoroughly investigated his case and advised him on the law.  (D.E. 4, at 35).  He noted that he was satisfied with her representation, and that he was pleading guilty voluntarily and in open court.  Id.  Petitioner's plea agreement assented to a recommended punishment of thirteen years in prison.  Id. at 44.  He waived the right to appeal his conviction and was admonished of his rights by the judge.  (D.E. 26-1, at 46-47, 50, 53).  Petitioner was convicted on the same day and sentenced to thirteen years

incarceration at the Texas Department of Criminal Justice on the manslaughter conviction and ten years on the unlawful possession charge, running concurrently. (D.E. 4, at 42; D.E. 26-4, at 112).

## B.   Petitioner's Post-Conviction Proceedings.

On April 13, 2009, Petitioner filed a habeas application in the trial court challenging his convictions.  Ex parte Gonzalez, App. No. WR-72,760-02.  He alleged that there was no evidence to support his conviction, that he received ineffective assistance of counsel, and that his plea was coerced.  Id.  In an amended petition, he elaborated on his claims arguing that his guilty plea had been involuntary because he had received ineffective assistance from his counsel.  (D.E. 4, at 75).

Petitioner also asserted that his plea had been coerced by law enforcement. Id. at 80.  He contended that the prosecution had deliberately distorted the evidence and law in the trials of Mr. Lozano and Mr. Perez, and that they threatened to do the same in his case if he did not agree to plead guilty.  Id. at 96.  On October 7, 2009, the Texas Court of Criminal Appeals denied relief without written order on the recommendation of the trial court.  Id. at 131.

On December 3, 2009, Petitioner filed a federal habeas action challenging his manslaughter conviction in the San Antonio Division of the Western District of

Texas, lodging the same claims that he lodges in the petition under consideration here, as well as a challenge to the sufficiency of the evidence.  Gonzalez v. Thaler, 2:09-CV-357 (S.D. Tex. 2009), at (D.E. 2).  After the action was transferred to this Court, his claims were dismissed for being partly unexhausted and wholly without merit.  See generally Gonzalez v. Thaler, No. C-09-357, 2010 WL 2710647 (S.D. Tex. May 11, 2010) (unpublished), recommendation adopted by 2010 WL 2710645 (S.D. Tex. July 6, 2010) (unpublished).  Petitioner's appeal of the denial of the Certificate of Appealability is currently pending in the Fifth Circuit Court of Appeals.  Gonzalez v. Thaler, No. 10-40689 (5th Cir. Oct 20, 2010) (unpublished).

Petitioner filed this action on February 16, 2010, in the San Antonio Division of the Western District of Texas, challenging his felon in possession conviction. (D.E. 2).  On February 25, 2010, it was transferred to this Court.  (D.E. 6, 7, 8).

**C.    Mr. Perez's Post-Conviction Proceedings.**

Mr. Perez's conviction was upheld on direct appeal by the Texas Thirteenth Court of Appeals on February 26, 2009.  Perez v. State, No. 13-08-296-CR, 2009 WL 1607811 (Tex. App. Feb. 26, 2009) (unpublished).  The court rejected Mr. Perez's argument that the state of mind necessary for murder had not been proven, noting that "[e]vidence is sufficient to convict under the law of parties where the defendant is physically present at the commission of the offense and encourages its

6

commission by words or other agreement."  Id. at 8 (quoting Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1995)).  The Perez court further observed that "the presence of the defendant at the scene ... is a circumstance tending to prove guilt."  Id. (citing Beardsley v. State, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987)).

On June 25, 2009, Mr. Perez filed a petition for discretionary review in the Texas Court of Criminal Appeals.  (D.E. 26-2, at 19-39).  He argued, inter alia, that the evidence had been insufficient to support his conviction because there was nothing to indicate that he was acting with the same common purpose as Mr. Lozano when he fired the weapon.  Id. at 32-37.  The court declined to exercise discretionary review.  (D.E. 4, at 151).  On January 19, 2010, the United States Supreme Court denied Mr. Perez's petition for writ of certiorari.  Perez v. Texas, __ U.S. __, 130 S. Ct. 1149 (2010).

### III.  PETITIONER'S ALLEGATIONS

Petitioner articulates two grounds for habeas relief.  (D.E. 1, at 6-7).  First, he claims that he was given ineffective assistance of counsel because his attorney failed to conduct a thorough investigation of his case and the relevant law.  Id. at 6. Second, he asserts that his guilty plea was coerced by the prosecutors and judge, who threatened to distort the law and the evidence.  Id.  Petitioner requests that his

conviction be voided or, in the alternative, that an evidentiary hearing be held to develop the record on his claims.  (D.E. 2, at 27).

## IV.  DISCUSSION

Respondent urges that the petition be dismissed as barred by the statute of limitations.  (D.E. 31).

## A.    The Standard Of Review For Summary Judgment Motions.

Rule 56 of the Federal Rules of Civil Procedure applies to federal habeas corpus cases.  Clark v. Johnson, 202 F.3d 760, 764-65 (5th Cir. 2000) (citations omitted).  Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Courts must consider the record as a whole, including all pleadings, depositions, affidavits, interrogatories and admissions on file, in the light most favorable to the non-movant.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (citations omitted).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986);

Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988) (citation omitted).  Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); Williams, 836 F.2d at 960 (citation omitted).

   If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted). The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment.  Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citation omitted).  Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof.  Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).

**B.     Federal Habeas Corpus Standard Of Review Pursuant To The AEDPA.**

Federal habeas relief is available to a state prisoner only if he is being held in violation of the Constitution, laws, or treaties of the United States.  Boyd v. Scott, 45 F.3d 876, 881 (5th Cir. 1994) (per curiam) (citation omitted).  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), courts may not grant habeas relief unless a petitioner demonstrates that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," or was "based on an unreasonable determination in light of the facts." 28 U.S.C. § 2254(d).  Thus, "federal habeas relief is only merited where the state court decision is both incorrect *and* objectively unreasonable."  Morrow v. Dretke, 367 F.3d 309, 313 (5th Cir. 2004) (emphasis in original) (citing Williams v. Taylor, 529 U.S. 362, 411 (2000)); see also Riddle v. Cockrell, 288 F.3d 713, 716 (5th Cir. 2002).  The AEDPA's provisions "ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002) (citing Williams, 529 U.S. at 403-04).

The Supreme Court has concluded that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings.  Id. at 694 (citing Williams, 529 U.S. at 404-05).  The Bell Court elaborated on the distinctions between "contrary to" and an "unreasonable application:"

10

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one.

Id. (citations omitted).

The Fifth Circuit has explained that the "contrary to" clause applies where a "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (citation omitted).  The Fifth Circuit has further determined that "§ 2254(d) permits a federal habeas court 'to review only a state court's 'decision' and not the written opinion explaining that decision.'"  St. Aubin v. Quarterman, 470 F.3d 1096, 1100 (5th Cir. 2006) (citing Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam)); accord Anderson v. Johnson, 338 F.3d 382, 390 (5th Cir. 2003) (citation omitted).  The state court's "ultimate decision" is to be tested for reasonableness, "not every jot of its reasoning."  Santellan v. Cockrell,

11

271 F.3d 190, 193 (5th Cir. 2001).  Furthermore, a state court need not cite, or
"even be aware of [Supreme Court] precedents, 'so long as neither the reasoning
nor the result of the state-court decision contradicts them.'"  Mitchell v. Esparza,
540 U.S. 12, 16 (2003) (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

Absent a direct conflict with Supreme Court authority, habeas relief is
available if a state court decision is objectively unreasonable.  Montoya v. Johnson,
226 F.3d 399, 404 (5th Cir. 2000).  A federal district court "must reverse when [it]
conclude[s] that the state court decision applies the correct legal rule to a given set
of facts in a manner that is so patently incorrect as to be 'unreasonable.'"  Gardner
v. Johnson, 247 F.3d 551, 560 (5th Cir. 2001).  As with the "contrary to" test, the
focus of the "unreasonable application" test is "on the ultimate legal conclusion that
the state court reached and not on whether the state court considered and discussed
every angle of evidence."  Neal, 286 F.3d at 246.

Finally, "[t]he AEDPA requires that [the Court] presume correct the state
court's findings of fact unless the petitioner 'rebut[s] the presumption of correctness
by clear and convincing evidence.'"  Morrow, 367 F.3d at 315 (quoting 28 U.S.C. §
2254(e)(1)).  The presumption of correctness is also accorded to adjudications made
during state post-conviction proceedings.  Id.  The burden to rebut the presumption
of correctness remains on the petitioner even if the state "hearing was a 'paper'

12

hearing and may not have been full or fair." Id. (citing Valdez v. Cockrell, 274 F.3d 941, 950-51 (5th Cir. 2001)).  In some circumstances, findings of fact may be implied from conclusions of law.  See Valdez, 274 F.3d at 948 n.11 ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.") (citations omitted); Goodwin v. Johnson, 132 F.3d 162, 183-84 (5th Cir. 1997).

**C.    The Statute Of Limitations.**

**1.    Petitioner's claim was filed outside of the limitations period.**

Respondent contends that Petitioner's claim is barred by the statute of limitations.  (D.E. 31, at 8-11).  In particular, he asserts that Petitioner's conviction became final on May 9, 2008 and that he therefore had until May 9, 2009 to file.  Id. at 9.  He further argues that the limitations period was tolled between April 13, 2009 and October 7, 2009, the period during which his state habeas application was working its way through the Texas courts.  Id.  According to Respondent's calculation, this extended the window until November 3, 2009 and Petitioner's filing, which Respondent dates at February 11, 2010, was one hundred days tardy. Id. at 10.  Respondent notes that calculating the limitations period as beginning to run thirty days after the conviction, in light of the time to appeal, still leaves the

petition late.  Id.  Finally, he further argues that Petitioner is not entitled to equitable tolling because he has not sufficiently demonstrated impediments to timely filing and because he did not diligently pursue his rights.  Id. at 11-14.

Petitioner responds that he is not time-barred and presents an alternative procedural time-line.  (D.E. 37).  Most importantly, he disputes Respondent's dating of his petition as February 11, 2010, instead asserting that he provided the petition to a prison officer on December 8, 2009, that it was lost, and that he only became aware of this error in February of 2010.  Id. at 2.

The AEDPA provides a one-year limitations period for filing a federal habeas petition in district court by a person in custody pursuant to the judgment of a state court.  28 U.S.C. § 2244(d)(1).  That period runs from the latest of four alternative dates:

     (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

     (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

     (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to

14

cases on collateral review; or

(D)    the date on which the factual predicate of the claim
or claims presented could have been discovered
through the exercise of due diligence.

Id.  Nevertheless, certain actions will toll the limitation period.  For example, a

prisoner may not be granted federal habeas relief unless he has first sought state

habeas review and been denied relief.  28 U.S.C. § 2254(b)(1).  While a prisoner

seeks that state review, the AEDPA one-year period will be tolled:

The time during which a properly filed application for
State post-conviction or other collateral review with
respect to the pertinent judgment or claim is pending shall
not be counted toward any period of limitation under this
subsection.

28 U.S.C. § 2244(d)(2).

Petitioner's claims concern his guilty plea and situations precipitating it.

Furthermore, he does not claim that an impediment prevented him from filing his

petition, a newly recognized Constitutional right applies to his case, or that the

factual predicate underlying his claim was discovered after his conviction became

final.  Thus, 28 U.S.C. § 2244(d)(1)(A) applies, and the AEDPA statute of

limitations began running when Petitioner's judgment became final.

Petitioner's conviction was entered on May 9, 2008.  However, in Texas, a

defendant has thirty days from the date a sentence is imposed to file a notice of

appeal.  Tex. R. App. P. 26.2(a)(1).  If a defendant has signed a plea agreement and waived his right to appeal, his judgment still becomes final at the expiration of that thirty-day period for purposes of 28 U.S.C. § 2244(d)(1)(A).  McCollum v. Quarterman, No. H-07-906, 2007 WL 2428293, at *1 (S.D. Tex. Aug. 21, 2007) (unpublished).  Therefore, Petitioner's AEDPA statue of limitations began running on June 9, 2008.  See Tex. R. App. P. 4.1(a) (the period would have started on June 8, 2008, but because that day was a Sunday, the period began one day later).  Consequently, the period was set to expire after June 8, 2009.  However, the statute of limitations was tolled from the time he filed his state petition on April 13, 2009 to the time it was denied by the Texas Court of Criminal Appeals on October 7, 2009.  See 28 U.S.C. § 2244(d)(2).  That period totaled 178 days, and extended his limitations period to December 3, 2009.  Therefore, even accepting Petitioner's claim that he filed his petition on December 8, 2009, his petition was still untimely. (D.E. 37, at 2).

Accordingly, it is respectfully recommended that Petitioner's claim was filed outside of the limitations period.

**2.      There is a fact issue as to whether Petitioner is entitled to equitable tolling.**

The decision to invoke equitable tolling is within the discretion of the district court.  See Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999).  The Fifth Circuit

"has held that equitable tolling of the AEDPA limitations period is available "'in rare and exceptional circumstances' where it is necessary to 'preserve[] a [petitioner's] claims when strict application of the statute of limitations would be inequitable.'" Johnson v. Quarterman, 483 F.3d 278, 286 (5th Cir. 2007) (quoting Fierro v. Cockrell, 294 F.3d 674, 682 (5th Cir. 2002)). "To be entitled to equitable tolling, [a petitioner] must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Excusable neglect or ignorance of the law do not justify equitable tolling. Fierro, 294 F.3d at 682. Equitable tolling of the limitations period applies principally where the petitioner is actively misled by the respondent about the petition, or is prevented in some extraordinary way from asserting his rights. Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999) (per curiam) (citation omitted). A prisoner proceeding pro se is not a "rare and exceptional" circumstance. Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000) (citations omitted).

Petitioner submits that he is entitled to equitable tolling because the Texas Court of Criminal Appeals neglected to notify him of the disposition of his state habeas action until December 3, 2009, three months after it issued its ruling. (D.E.

2, at 7).  Respondent complains that the only evidence in the record to substantiate

this delay is Petitioner's handwritten dating of the denial and suggests that this is

insufficient.  (D.E. 31, at 11).  As a preliminary matter, the record is no longer

bereft of additional evidence speaking to the alleged delay, as Petitioner has

submitted an inmate request form that purports to include a prison official's

confirmation that the denial by the Court of Criminal Appeals arrived on December

2, 2009.  (D.E. 37-1, at 16).  Moreover, it is not clear what other evidence Petitioner

could be reasonably expected to produce attesting to a delay in sending out notice

of a ruling he was not aware had been issued, caused by administrative issues at a

courthouse he had limited contact with, and occurring while he was confined in

prison.

Given the absence of any evidence indicating timely notice was sent, and

accepting Petitioner's allegations as true for purposes of the motion for summary

judgment, there is a material issue of fact as to whether he is entitled to equitable

tolling for the period between October 7, 2009, the date the Court of Criminal

Appeals denied habeas relief, and December 3, 2010, when he maintains he

received the notice of denial.  The fifty-seven days that elapsed during that period

would extend Petitioner's deadline from December 4, 2009 to January 30, 2010.

The question then is whether Petitioner should be considered to have filed his

18

petition on December 8, 2009, the date he claims to have given it to prison personnel to be mailed, or February 11, 2010, the date on which the copy that was filed was placed in prison mail.  In support of his account, Petitioner points to various financial documents and correspondence between his aunt and court employees.  (D.E. 37, at 5).  In his opposition to Respondent's pending motion, he attached a December 28, 2009 letter from the financial deputy at the District Court in San Antonio, acknowledging that Petitioner's aunt had sent $5.00 "to be applied to a second petition for a separate charge," and refunding the money because "the habeas fee has already been paid and no further payments are required."  (D.E. 37-1, at 24).  This letter supports Petitioner's claim that he believed he had already successfully filed a second federal habeas petition.  He has also submitted a series of letters from relatives further bolstering this contention.  Id. at 31-40.

Viewing this evidence in the light most favorable to Petitioner, there is a fact issue as to whether he filed the petition on December 8, 2009.  See generally Holland v. Florida, __ U.S. __, 130 S. Ct. 2549, 2264-65 (2010) (emphasizing reasonable misunderstanding of filing deadline by habeas petitioner in finding statute of limitations equitably tolled); Medley v. Thaler, No. 08-11009, 2010 WL 4459836, at *5 (5th Cir. Nov. 9, 2010) (per curiam) (unpublished) (highlighting habeas petitioner's admission that prison law library staff gave him proper advice

19

and assistance on his petition in finding no equitable tolling).

Finally, Respondent argues that Petitioner is not entitled to equitable filing because he has not pursued his rights diligently.  (D.E. 31, at 14).  In support of that view, he attributes two delays in the post-conviction proceedings to Petitioner. First, he asserts that Petitioner "was inactive in challenging his guilty plea for more than eleven months after he entered his plea."  Id.  However, this delay, if it could be considered one in light of the fact that Petitioner's eventual challenge was timely, is irrelevant to the question of whether Petitioner was diligent in pursuing his federal habeas rights during the period in which the limitations period for his second federal petition closed.

The second delay supposedly indicating a lack of diligence on Petitioner's part consists of the two months that elapsed between the date Petitioner claimed he received notice of the denial and the filing of this federal petition.  Id.  One problem with this argument is that it assumes the falsity of Petitioner's version of events, according to which he filed his petition on December 8, 2009, a mere five days after he received notice of the denial.  (D.E. 2, at 7).  The exact opposite presumption attaches to that version on summary judgment, and there is documentation to support it.  (D.E. 37-1, at 24, 31-40); see Holland, __ U.S. __, 130 S. Ct. at 2565 (noting lack of information regarding filing deadlines available to habeas petitioner

and his attempts to gather that information in finding him diligent for equitable tolling purposes).

Moreover, a two-month delay does not necessarily establish a lack of diligence on the part of a pro se habeas petitioner in preparing a challenge in a complicated case involving several defendants and implicating several dense areas of law. Indeed, an examination of the record as a whole indicates that Petitioner was not neglectful or indifferent. On the contrary, he has indicated repeatedly that he is committed to following the proper protocols, and has sought reassurances wherever possible that he has done so. See, e.g., (D.E. 4, at 127-29); see also Fisher, 174 F.3d at 713 ("As a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules.... We must be cautious not to apply the statute of limitations too harshly.")

Accordingly, it is respectfully recommended that there is a fact issue as to whether Petitioner is entitled to equitable tolling, and summary judgment should not be granted on the ground that the petition is time-barred. See Holland, __ U.S. __, 130 S. Ct. at 2563 (habeas "courts exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case").

21

**D.    Petitioner Did Not Receive Ineffective Assistance Of Counsel.**

Petitioner argues that his attorney was ineffective because she failed to properly investigate the facts of his case and the pertinent law.  (D.E. 2, at 10-23). In particular, he contends that she neglected to examine faulty prosecutorial statements and jury instructions which undermined the validity of Mr. Perez's conviction, and by extension of his own.  Id. at 11.  He claims that these statements led the jury to the false conclusion that the defendants could be found guilty of the charge if they acted recklessly with respect to the death of Mr. Rodriguez, and that his attorney did not attempt to correct this misconception in his own case.  Id. at 11-12.  On the question of harm, Petitioner maintains that if his attorney had brought to his attention the legal deficiencies of the prosecution's case against Mr. Perez, that he would have become aware of the shortcomings in his own case and never would have pled guilty.  Id. at 12.

The Fifth Circuit has determined that "under AEDPA a state court decision rejecting a *Strickland* claim must be accepted unless it was an unreasonable application of its teaching."  Granados v. Quarterman, 455 F.3d 529, 534 (5th Cir. 2006).  To prevail on a claim of ineffective assistance of counsel, a state prisoner seeking federal habeas corpus relief bears the burden of showing that: (1) counsel's performance was deficient, and (2) the deficient performance resulted in actual

22

prejudice.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  However, a

reviewing court need not consider both prongs if the court concludes that petitioner

has failed to prove either.  Id. at 697; Amos v. Scott, 61 F.3d 333, 348 (5th Cir.

1995) (citation omitted).

　　　In order to show counsel's performance was deficient, petitioner must show

"that counsel made errors so serious that counsel was not functioning as the

'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S.

at 687.  He must demonstrate that counsel's representation fell below an objective

standard of reasonableness as measured by prevailing professional standards.  See

Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).

　　　Counsel's challenged conduct should be evaluated from the perspective of

counsel at the time the conduct occurred.  Strickland, 466 U.S. at 690.  Due to the

difficulties inherent in engaging in this analysis without being tainted by "the

distorting effects of hindsight," a court's review should be highly deferential to

counsel.  Id. at 689.  The reviewing court must give great deference to counsel's

performance, strongly presuming that counsel has exercised reasonable professional

judgment.  Id. at 690; see also Romero v. Lynaugh, 884 F.2d 871, 876 (5th Cir.

1989) ("strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance") (quoting Strickland, 466 U.S. at 689).

The Fifth Circuit has explained that due to "the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices."  Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993).  In addition, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Johnson v. Dretke, 394 F.3d 332, 337 (5th Cir. 2004) (internal quotation marks and citations omitted); accord United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002) (citation omitted).

Under the second prong of the Strickland two-part test, Petitioner may not simply allege, but must affirmatively prove, actual prejudice resulting from the ineffective assistance of counsel.  Strickland, 466 U.S. at 693.  Thus, he must affirmatively show that his counsel's actions deprived him of a fair trial.  See Czere v. Butler, 833 F.2d 59, 63-64 (5th Cir. 1987).  Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  Strickland, 466 U.S. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (habeas petitioner must show that the trial result was unreliable, or the proceeding was fundamentally unfair due to counsel's deficient performance) (citations omitted).

24

Petitioner has the burden of proof under the Strickland test.  See Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) (holding burden of proof is on petitioner in federal habeas proceeding).  In addition, conclusory allegations of ineffective assistance of counsel do not give rise to a constitutional claim for federal habeas relief.  Collier v. Cockrell, 300 F.3d 577, 587 (5th Cir. 2002) (citations omitted); see also Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000) ("Because [petitioner] failed to set forth the nature of *any* of the errors trial counsel purportedly failed to preserve and did not set forth any resulting prejudice, the district court properly determined that these three claims of ineffective assistance were conclusory.") (emphasis in original).

Finally, in order to prove that he is entitled to federal habeas relief due to ineffective assistance of counsel, Petitioner must overcome the presumption of correctness to which the state court's findings are entitled.  See Schaetzle v. Cockrell, 343 F.3d 440, 444 (5th Cir. 2003) ("It bears repeating that the test for federal habeas purposes is *not* whether [petitioner made a showing under Strickland, but] ... whether the state court's decision – that [the petitioner] did *not* make the *Strickland* showing – was contrary to, or an unreasonable application of, the standards, provided by clearly established federal law (*Strickland*), for succeeding on his ineffective assistance claim.").

Petitioner's ineffective assistance claim fails for several reasons.  First, the Texas courts have already considered and rejected Petitioner's ineffective assistance claim.  The claims that he pursues in the instant petition were raised in his state habeas corpus application.  Ex parte Gonzalez, App. No. WR-72,760-02.  The trial court entered its findings, conclusions, and recommendation that Petitioner's claims be denied.  (D.E. 4, at 58).  The Court of Criminal Appeals then denied his state habeas application without written order based on the findings of the trial court.  Id. at 131.

This denial of Petitioner's application, even though it does not contain a written opinion, is not silent or ambiguous.  See Ex Parte Torres, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (en banc) (holding a "denial" signifies an adjudication on the merits).  It is a decision on the merits and is entitled to the AEDPA's deference.  28 U.S.C. § 2254(d); see also Neal, 286 F.3d at 235 ("In the context of federal habeas proceedings, adjudication 'on the merits' is a term of art that refers to whether a court's disposition of the case was substantive.") (citation omitted).  Thus deference to the state court decision is mandated by § 2254(d).  See Morrow, 367 F.3d at 313.

Second, Petitioner vouched for his attorney's effectiveness in his plea agreement, placing a "heavy burden" on his attempt to cast doubt on the quality of

her representation and creating a presumption in the truth of his endorsement. United States v. Diaz, 733 F.2d 371, 373-74 (5th Cir. 1984) (citation omitted); see also United States v. Fuller, 769 F.2d 1095, 1099 (5th Cir. 1985).  He has provided nothing to overcome this burden.

Third, and perhaps most importantly, no prejudice resulted from the alleged error.  The dismissal of Petitioner's previous federal habeas petition emphasized that he had not alleged that his counsel had discussed with him the trial and conviction of Mr. Perez.  Gonzalez, 2010 WL 2710647, at *5.  In this action, Petitioner now asserts that they did in fact discuss his cousin's case and that his attorney "insisted to him that he could be charged to a jury with first degree murder just like his cousin and Lozano were, and that he could receive a 35 year sentence for first degree murder."  (D.E. 37, at 8).

Setting to one side the question of whether such charges would be legally sound, Petitioner has brought forward no reason to doubt the veracity of his counsel's warning.  On the contrary, his attorney was correct to counsel her client that he could face the same charges as his cousin, and could suffer the same punishment.  Indeed, Petitioner does not dispute that he and his cousin played very similar roles in the incident.  If anything, by focusing his challenge on the perceived legal weaknesses in his cousin's conviction, he implies that they had comparable

27

involvement in the events of December 2, 2006.  There is ample evidence in the record to support this view.  <u>See</u>, <u>e.g.</u>, (D.E. 27, at 97) (police report referring to Petitioner's statement that he believed the group was traveling to Mr. Rodriguez's home in order to assault him).  Consequently, regardless of any legal issues, it would have been remiss of Petitioner's counsel <u>not</u> to instruct her client that he could well end up facing a sentence as severe as that of his cousin.

Fourth, and finally, granting <u>arguendo</u> the relevance of Petitioner's legal theory regarding the charges against his cousin, that theory is seriously flawed.  The state court that heard Mr. Perez's direct appeal considered at length the exact issue upon which Petitioner bases his attack: whether an individual acting alongside Mr. Lozano as a party to the shooting had the requisite mental state to commit first-degree murder.  That court rejected the challenge, finding that the evidence indicated the existence of such a mental state, and citing controlling case law from the highest criminal court in Texas.  <u>Perez</u>, 2009 WL 1607811, at *7-9.  The federal courts are not empowered to instruct a state judiciary on the meaning of its own statutes.  <u>See</u> <u>generally</u> <u>Young v. Dretke</u>, 356 F.3d 616, 628 (5th Cir. 2004) ("in our role as a federal habeas court, we cannot review the correctness of the state habeas court's interpretation of state law") (citations omitted).

In light of the appellate court's ruling, it is not clear what advice Petitioner

faults his counsel for failing to provide.  If she had been basing her counsel on his cousin's case, as Petitioner seems to believe she should have, the most she could have told him would have been the following: that he could go to trial with a plausible but difficult argument about intent, and that such an argument was likely to be rejected by the trial court,[1] by twelve of his peers, by a state appellate court, by the highest criminal court in Texas, and then by the United States Supreme Court.  There is no reason to imagine that receiving such advice would have persuaded Petitioner to take his case to trial and presumably receive a far more severe sentence than the one he ended up with.  Assuming Petitioner's allegations as true, his counsel served him ably, provided sound and reasonable advice, and caused him no prejudice.  He has not brought forward any facts to overcome the presumption of her effectiveness, or of the state court's correctness, or of the reliability of his plea agreement and its sworn attestations.

Accordingly, it is respectfully recommended that Petitioner's claim of ineffective assistance should be dismissed.

---

[1] Petitioner asserts that "the trial court acquitted all three of these men of murder ... because the elements of murder just were not there."  (D.E. 37, at 8).  Presumably, he is referring to the trial court's decision to allow the jury to consider the lesser included offense of manslaughter in Mr. Perez's trial.  (D.E. 4, at 21).  However, that decision does not reflect any determination on the part of the trial court that there were not sufficient facts to support a murder conviction, given that the first-degree murder charge remained and was in fact used to convict Mr. Perez.

**E.      Petitioner's Plea Was Not Coerced.**

Petitioner alleges that his guilty plea was coerced because the prosecutors and judge threatened him that he would be punished as severely as his cousin if he failed to plead.  (D.E. 2, at 23).  He further contends that prosecutors guaranteed that at trial they would distort the facts of his case, the available evidence, and the applicable law if he fought the charges.  Id. at 24-25.

In order to prove a claim that a guilty plea was coerced by a statement from the state or an attorney, a petitioner "must prove that an actual promise was made by showing (1) the exact terms of the alleged promise; (2) exactly when, where, and by whom such promise was made; and (3) the precise identity of any eyewitness to the promise."  DeVille v. Whitley, 21 F.3d 654, 658 (5th Cir. 1994) (citation omitted).

Although Petitioner appears to ground his coercion claim in part on alleged improprieties that occurred in Mr. Perez's trial, he acknowledges that he was unaware of these errors when debating whether to plead or not.  (D.E. 2, at 24; D.E. 4, at 97).  Consequently, his coercion claim is in large part a reiteration of his ineffective assistance claim.  In other words, Petitioner believes that because his cousin was convicted under a flawed legal theory, the prediction on the part of the prosecutors that he would face similar penalties was inappropriate.  (D.E. 37, at 10).

This argument does not survive summary judgment.

As an initial matter, one can hardly fault prosecutors for confronting a defendant with a legal theory that is subsequently endorsed by an appellate court as consistent with well-established precedent.  Perez, 2009 WL 1607811, at *7-9. Furthermore, contrary to Petitioner's belief, there is nothing inherently coercive about a prosecutor informing a defendant as to the consequences he potentially faces should he opt to proceed to trial.  Indeed, plea bargaining is founded on such exchanges.  See United States v. Sylvester, 583 F.3d 285, 290 (5th Cir. 2009) ("the plea bargaining process necessarily exerts such pressure ... and, absent specific evidence that the agreement was entered into unknowing or involuntarily, courts cannot infer abuse of prosecutorial bargaining power") (citation omitted), cert. denied, Sylvester v. United States, __ U.S. __, 130 S. Ct. 1313 (2010).

Finally, with respect to Petitioner's allegations that both prosecutors and the trial court threatened to distort or misstate the facts of his case, he has not provided any evidence to support that contention.  Such an absence is inadequate to overcome the burden placed on an individual challenging the ramifications of a plea bargain he signed with attestations of intelligence and voluntariness.  See United States v. Abreo, 30 F.3d 29, 31 (5th Cir. 1994) ("Such testimony in open court carries a strong presumption of verity") (citing Blackledge v. Allison, 431 U.S. 63,

74 (1977)).  Nor does it come remotely near to satisfying the DeVille demand for specific evidence of coercive threats or promises.  21 F.3d at 658.

Accordingly, it is respectfully recommended that Petitioner's coerced plea claim should be dismissed.

## V.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Fifth Circuit from a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that this Court nonetheless address whether he would be entitled to a certificate of appealability.  A district court ruling on a petitioner's relief may sua sponte rule on a certificate of appealability because it "is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious."  Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam).

The statute establishes that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their

32

merits." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).  To warrant a grant of the

certificate as to claims denied on their merits, "[t]he petitioner must demonstrate

that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484

(2000).  This standard requires a § 2254 petitioner to demonstrate that "reasonable

jurists could debate whether ... the [petition] should have been resolved in a

different manner or that the issues presented ... deserve[d] encouragement to

proceed further." <u>United States v. Jones</u>, 287 F.3d 325, 329 (5th Cir. 2002)

(citation omitted).

As to claims district courts reject solely on procedural grounds, a petitioner

must show both "that jurists of reason would find it debatable whether the petition

states a valid claim of the denial of a constitutional right <u>and</u> that jurists of reason

would find it debatable whether the district court was correct in its procedural

ruling." <u>Slack</u>, 529 U.S. at 484 (emphasis added).

It is respectfully recommended that reasonable jurists could not debate this

denial on substantive or procedural grounds nor find that the issues presented are

adequate to proceed.  <u>Miller-El</u>, 537 U.S. at 327 (citing <u>Slack</u>, 529 U.S. at 484).

Accordingly, it is respectfully recommended that the Court find that Petitioner is

not entitled to a certificate of appealability.

## VI.  RECOMMENDATION

Based on the foregoing reasons, it is respectfully recommended that Respondent's motion for summary judgment, (D.E. 31), be granted on the merits, and this habeas petition, (D.E. 1), be dismissed.  Additionally, it is respectfully recommended that Petitioner be denied a certificate of appealability.

Respectfully submitted this 4th day of January 2011.

BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; Rule 8(b) of the Rules Governing § 2254 Cases; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).